UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LARRY BEEDLE,

       Plaintiff,                    CIVIL ACTION NO. 05 CV 70430 DT

   v.                                DISTRICT JUDGE ARTHUR J. TARNOW

DR. DEMASI, DR. DOANE, DR. CRAIG   MAGISTRATE JUDGE VIRGINIA M. MORGAN
HUTCHINSON, CORRECTIONAL
MEDICAL SERVICES, DEBRA KRUG,
G. ROBERT COTTON CORRECTIONAL
FACILITY HEALTH CARE,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

    Plaintiff, an inmate at the G. Robert Cotton Correctional Facility (JCF), Jackson, Michigan, filed suit under 42 U.S.C. § 1983 alleging that defendants CMS, Dr. Craig Hutchinson, and others were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution.  Plaintiff has also alleged state law gross negligence claims.  The matter comes before the court on defendant Correctional Medical Services' (CMS) motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1997e(a).  For the reasons stated herein, the court recommends that plaintiff's claims against CMS and Dr. Craig Hutchinson, be **DISMISSED WITH PREJUDICE**.

## II.  Background

The facts alleged in the complaint, which the court will take as true for the purposes of this motion, are as follows:  On March 27, 2003, plaintiff tripped on an extension cord while working in the prison complex and sustained an injury to his knee.  An ambulance was called, and plaintiff was transported to the emergency room at Duane L. Waters Hospital.  Plaintiff was diagnosed with a possible rupture of the quadriceps muscle and tendon of the right knee.  The emergency room physician noted that plaintiff was in pain and could not lift his right leg with his knee extended or lift his leg while in a supine position.  Plaintiff was given a "wheelchair detail," and the physician recommended that plaintiff be seen by an orthopedic specialist as soon as possible.  Plaintiff was then discharged back to JCF.  That same day, the JCF Medical Service Provider faxed a CMS Authorization Request to CMS Regional Headquarters indicating that plaintiff needed an orthopedic consultation as soon as possible.

On March 28, 2003, plaintiff was seen by a JCF nurse practitioner (NP), who noted that plaintiff had a suspected quadriceps tear, with no diagnostic confirmation.  The nurse practitioner further noted that defendant Dr. DeMasi and JCF physician Dr. Antonini had discussed the case and that instructions were given to send plaintiff to the Foote Hospital emergency room for an orthopedic evaluation.  The NP also noted that plaintiff was unable walk, unable to bend his right knee, and was experiencing pain.

That same day, a CMS representative contacted the JCF Medical Services Provider about the urgent orthopedic referral, stating that Dr. Mishra, an orthopedic specialist, was on vacation until some time in April and, therefore, that no immediate orthopedic appointment would be

available. The nurse practitioner then contacted defendant Dr. Doane's office for an urgent referral. Dr. Doane was notified of the situation, and a copy of the Duane L. Waters emergency room record was faxed to him. After reviewing the record, Dr. Doane indicated that he felt plaintiff could wait until Dr. Mishra returned from vacation for further orthopedic consultation.

Later that day plaintiff was transported to the Foote Hospital Emergency Room and was evaluated by Dr. Nao, an orthopedic surgeon. Dr. Nao diagnosed a partial quadriceps tear and recommended that he follow up with Dr. Mishra in one week. Dr. Nao further recommended that plaintiff use a splint and crutches. Upon his return to JCF, plaintiff was assigned a wheelchair.

On March 31, 2003, plaintiff was seen again by a JCF nurse practitioner. The nurse practitioner noted that Dr. Antonini had spoken with Dr. DeMasi regarding Dr. Nao's diagnosis and that Dr. DeMasi had indicated that plaintiff could await Dr. Mishra's return from vacation for further orthopedic consultation.

Plaintiff was finally seen by Dr. Mishra on April 23, 2003. Dr. Mishra noted that he had been on vacation but that defendant Dr. Doane was supposed to be covering for him. He did not know why plaintiff was not referred to Dr. Doane. Dr. Mishra further noted that upon examination, plaintiff's knee was found to be grossly swollen, with an appreciable defect between his quadriceps and the patella, that plaintiff could not raise his leg with his knee extended, and that knee extension was grossly weak. Dr. Mishra diagnosed a complete rupture of the right quadriceps tendon and concluded that plaintiff's knee needed immediate surgical attention. Dr. Mishra performed the necessary surgery on April 26, 2003. He indicated that the

tissue was in poor condition, that the suture ends were friable, and that it was likely that plaintiff would suffer permanent weakness of the tendon. Plaintiff was discharged back to JCF on April 28, 2003.

Plaintiff was seen by Dr. Mishra on May 28, 2003, for a post-surgical examination. Dr. Mishra indicated that plaintiff's prognosis remained guarded, that the healing process would be slow due to the fact that plaintiff was grossly obese and diabetic, and that there was a possibility of a re-rupture of the tendon due to the poor condition of the knee tissue.

Dr. Mishra examined plaintiff again on June 4, 2003. He determined that plaintiff could start restricted range of motion exercises with a hinged brace on his right leg. On June 6, 2003, plaintiff was seen by JCF Medical Service Provider J.J. Shaw, who indicated that plaintiff had been approved for physical therapy three times per week for two months. On June 10, 2003, CMS' Medical Director, Dr. Craig Hutchinson, denied payment for the physical therapy as approved and authorized payment for one therapy session per week for three weeks only.

Plaintiff alleges that Dr. Hutchinson's and/or CMS' failure to approve payment for the recommended physical therapy sessions constituted a violation of his Eighth Amendment rights. Plaintiff also alleges that their actions constituted gross negligence under Michigan law. CMS moves for dismissal on the ground that plaintiff failed to exhaust his administrative remedies prior to filing suit, as required under 42 U.S.C. § 1997e(a).

### III.  Discussion

#### A.  Procedural Issues

Pursuant to § 1997e(a), an inmate must exhaust his administrative remedies prior to filing an action under § 1983, or any other Federal law, regarding the conditions of his confinement. Further, as the Sixth Circuit recently held, § 1997e(a) requires "total exhaustion" of a prisoner's claims. Bey v. Johnson, – F.3d –, 2005 WL 1120283, 2005 Fed.App. 0194P, 6th Cir. (Mich.), Apr. 27, 2005. Under the total exhaustion rule, a complaint containing both exhausted and unexhausted claims must be dismissed, without prejudice, in its entirety. CMS, relying upon § 1997e(a) and Bey, contends that plaintiff did not exhaust all of his claims and, therefore, that his complaint should be dismissed.

While the question of exhaustion is typically a threshold issue that will be decided prior to reaching the merits of a prisoner's complaint, § 1997e(c)(2) provides that "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." As discussed below, plaintiff has failed to state claims upon which relief may be granted against CMS and Dr. Hutchinson. The court will thus decline to address the question of exhaustion and will recommend dismissal of the complaint with prejudice as to these defendants pursuant to § 1997e(c)(2).[1]

---

[1] Dr. Hutchinson did not join in CMS' motion or otherwise move for dismissal. However, 42 U.S.C. § 1997e(c)(1), (2), as well as 28 U.S.C. § 1915A, permit *sua sponte* dismissal of a complaint, or any portion thereof, that fails to state a claim upon which relief may be granted. The allegations against Dr. Hutchinson and CMS are identical. In the interests of judicial efficiency, the court will address the claims against Dr. Hutchinson pursuant to § 1997e(c) and § 1915A.

### B. Claims Against Dr. Hutchinson and CMS

### (1) Eighth Amendment Claims

"A prison official's "deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994)(citations omitted). In order to establish an Eighth Amendment violation in the medical care context, an inmate must demonstrate that prison officials were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). The question of whether a prison official was deliberately indifferent to an inmate's medical needs is judged by the subjective standard enunciated in Farmer, 511 U.S. at 837, 114 S.Ct. at 1979:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.

Allegations of negligence or malpractice are insufficient to state an Eighth Amendment violation, as are allegations demonstrating a mere difference of opinion between the inmate and prison officials regarding the proper course of care. See Estelle, 429 U.S. at 106; see also, e.g., Parra-Soto v. Campbell, 73 Fed.Appx. 86, 21375376 WL 2003 (6th Cir.(Tenn.)).

Assuming that plaintiff's need for physical therapy constituted a serious medical need, Dr. Hutchinson's and/or CMS' approval of payment for one physical therapy session per week for three weeks rather than the recommended course of therapy of three sessions per week for

two months does not rise to the level of an Eighth Amendment violation.  Dr. Hutchinson and CMS did not deny plaintiff access to physical therapy altogether.  Rather, they simply approved fewer sessions than was recommended by the JCF Medical Service Provider.  These facts show, at most, a disagreement over the proper course of care or ordinary negligence.  As indicated above, allegations of ordinary negligence or a disagreement as to the proper course of care do not give rise to an Eighth Amendment deliberate indifference claim.  Based on the foregoing, the court finds that the allegations of plaintiff's complaint are plainly insufficient to state an Eighth Amendment claim upon which relief may be granted against CMS or Dr. Hutchinson.

### (2) Gross Negligence Claims

Under Michigan's governmental tort liability act (GTLA), "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MCL 691.1407(2)©. Again, plaintiff's allegations against CMS and Dr. Hutchinson demonstrate, at most, a mere difference in opinion regarding the proper course of treatment or ordinary negligence.  As such they are insufficient to state a claim for gross negligence under the GTLA.

### IV.  Conclusion

For the reasons set forth above, the court recommends that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as to CMS and Dr. Hutchinson.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                    s/Virginia M. Morgan  
                                                    VIRGINIA M. MORGAN  
Dated:   June 3, 2005                           UNITED STATES MAGISTRATE JUDGE

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the parties and attorneys of record electronic means or U.S. Mail on June 3, 2005.

                              s/Jennifer Hernandez  
                              Case Manager to  
                              Magistrate Judge Morgan