UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY BEEDLE,

        Plaintiff,                      CIVIL ACTION NO. 05 CV 70430 DT

    v.                                  DISTRICT JUDGE ARTHUR J. TARNOW

DR. DEMASI, *et al.*,               MAGISTRATE JUDGE VIRGINIA M. MORGAN

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      Plaintiff, an inmate at the G. Robert Cotton Correctional Facility (JCF), Jackson, Michigan, filed suit under 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution, and that they refused to provide him with copies of his medical records, in violation of the First and Fourteenth Amendments. Plaintiff has also alleged state law gross negligence claims. Defendants Debra Krug and G. Robert Cotton Correctional Facility Health Care (JCF Health Care) have filed a motion to dismiss plaintiff's complaint on the grounds that he failed to exhaust his administrative remedies prior to filing suit and/or that his complaint does not state a claim on which relief may be granted. Defendant Dr. Doane has joined in the motion,

arguing that plaintiff did not exhaust his administrative remedies prior to filing suit.[1]  For the reasons stated herein, the court recommends that the motion be **GRANTED**.

**II.  Background**

**A.  Factual Basis of Eighth Amendment and Gross Negligence Claims**

The pertinent facts alleged in the complaint regarding plaintiff's Eighth Amendment and gross negligence claims are as follows: On March 27, 2003, plaintiff tripped on an extension cord while working in the prison complex and sustained an injury to his knee.  An ambulance was called, and plaintiff was transported to the emergency room at Duane L. Waters Hospital.  Plaintiff was diagnosed with a possible rupture of the quadriceps muscle and tendon of the right knee.  The emergency room physician noted that plaintiff was in pain and could not lift his right leg with his knee extended or while in a supine position.  Plaintiff was given a "wheelchair detail," and the physician recommended that plaintiff be seen by an orthopedic specialist as soon as possible.  Plaintiff was then discharged back to JCF.  That same day, the JCF Medical Service Provider faxed an Authorization Request to defendant Correctional Medical Services' (CMS) Regional Headquarters indicating that plaintiff needed an orthopedic consultation as soon as possible.

On March 28, 2003, plaintiff was seen by a JCF nurse practitioner, who noted that plaintiff had a suspected quadriceps tear, with no diagnostic confirmation.  The nurse practitioner further noted that defendant Dr. DeMasi and JCF physician Dr. Antonini had

---

[1] Dr. Doane filed a prior motion to dismiss on the ground that plaintiff's complaint did not state a claim upon which relief could be granted.  The court disagreed and issued a Recommendation that the motion be denied.  Dr. Doane objected to the court's Report and Recommendation.  Those objections are currently pending before the district court.

discussed the case and that instructions were given to send plaintiff to the Foote Hospital emergency room for an orthopedic evaluation. The nurse practitioner also noted that plaintiff was unable walk or bend his right knee and that he was experiencing pain.

That same day, a CMS representative contacted the JCF Medical Services Provider about the urgent orthopedic referral, stating that Dr. Mishra, an orthopedic specialist, was on vacation until some time in April and, therefore, that no immediate orthopedic appointment would be available. The nurse practitioner then contacted defendant Dr. Doane's office for an urgent referral. Dr. Doane was notified of the situation, and a copy of the emergency room record was faxed to him. After reviewing the record, Dr. Doane indicated that he felt that plaintiff could wait until Dr. Mishra returned from vacation for further orthopedic consultation.

Later that day plaintiff was transported to the Foote Hospital Emergency Room and was evaluated by Dr. Nao, an orthopedic surgeon. Dr. Nao diagnosed a partial quadriceps tear and recommended that he follow up with Dr. Mishra in one week. Dr. Nao further recommended that plaintiff use a splint and crutches. Upon his return to JCF, plaintiff was assigned a wheelchair.

On March 31, 2003, plaintiff was seen again by a JCF nurse practitioner. The nurse practitioner noted that Dr. Antonini had spoken with Dr. DeMasi regarding Dr. Nao's diagnosis and that Dr. DeMasi had indicated that plaintiff could await Dr. Mishra's return from vacation for further orthopedic consultation.

Plaintiff was finally seen by Dr. Mishra on April 23, 2003. Dr. Mishra noted that he had been on vacation and that Dr. Doane was supposed to cover for him while he was gone. He did not know why plaintiff had not been referred to Dr. Doane. Dr. Mishra further noted that upon examination, plaintiff's knee was found to be grossly swollen, with an appreciable defect

between his quadriceps and the patella, that plaintiff could not raise his leg with his knee extended, and that his knee extension was grossly weak. Dr. Mishra diagnosed a complete rupture of the right quadriceps tendon and concluded that plaintiff's knee needed immediate surgical attention. Dr. Mishra performed the necessary surgery on April 26, 2003. He indicated that the tissue was in poor condition, that the suture ends were friable, and that it was likely that plaintiff would suffer permanent weakness of the tendon. Plaintiff was discharged back to JCF on April 28, 2003.

Plaintiff was seen by Dr. Mishra on May 28, 2003, for a post-surgical examination. Dr. Mishra indicated that plaintiff's prognosis remained guarded, that the healing process would be slow due to the fact that plaintiff was grossly obese and diabetic, and that there was a possibility of a re-rupture of the tendon due to the poor condition of the knee tissue.

### B.  Factual Basis of Plaintiff's First and Fourteenth Amendment Claims

The allegations of the complaint with respect to plaintiff's First and Fourteenth Amendment claims are as follows: In July of 2004, plaintiff sent two written requests for copies of his medical records to the JCF Health Care FOIA Coordinator, defendant Debra Krug. On October 6, 2004, when no response to his requests had been received, plaintiff filed a grievance. Plaintiff indicated in the grievance that the medical records were necessary to prepare and file a cause of action regarding the inadequate medical care he received for his knee injury, and he alleged that the failure of defendant Krug and/or JCF Health Care to provide the records constituted a violation of his First Amendment right to access the courts. On October 16, 2004, a JCF nurse interviewed plaintiff regarding the grievance. She informed plaintiff that his record requests could not be located. She also stated to plaintiff that he was "wasting his time and

money on trying to acquire his medical records, and that he would not win any lawsuit against Defendants." Plaintiff's Complaint, ¶ 12.

On October 18, 2004, plaintiff received a Step I grievance response indicating that his medical record request had been located, that defendant Krug had taken a job at a different correctional facility, but that she would return to JCF two days per week to process FOIA requests, and that plaintiff's request would be processed as soon as possible.

On October 26, 2004, plaintiff filed a Step II grievance regarding the failure of JCF Health Care and/or defendant Krug's failure to provide him with the requested medical records. He again asserted that their refusal to comply with his requests constituted an infringement upon his First Amendment right to access the courts. On November 12, 2004, plaintiff received a Step II grievance response indicating that defendant Krug had not been able to copy plaintiff's medical records because they "was [sic] out to other areas and unavailable." Plaintiff's Complaint, ¶ 39. It was further stated in the response that his request would be processed "soon." Plaintiff's Complaint, Attachment No. 14.

Shortly thereafter, plaintiff filed a Step III grievance reasserting the allegations he had made at the Step I and Step II levels. Plaintiff alleged in his complaint that he had received neither a Step III response nor the requested medical records as of January 18, 2005, the date on which he signed the complaint. However, plaintiff indicates in his response to the motion to dismiss filed by defendant Krug and JCF Health Care that he received copies of his medical records in March, 2005. Nonetheless, plaintiff persists in alleging that defendants violated his First and Fourteenth Amendment rights by failing to provide copies of his records in a timely manner, and he seeks damages in the amount of $50,000 for such violations.

### C.  Plaintiff's Claims

Plaintiff alleges the following claims against Dr. Doane, JCF Health Care, and defendant Krug: (1) Dr. Doane's failure to examine plaintiff's knee and to perform surgery on his knee in a timely manner constituted deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment, and gross negligence under Michigan law; (2) JCF Health Care and/or defendant Krug violated plaintiff's due process rights under the Fourteenth Amendment by refusing to provide him with copies of his medical records; (3) JCF Health Care and/or defendant Krug violated plaintiff's First Amendment right to access the courts by failing to provide him with copies of his medical records; and (4) JCF Health Care and/or defendant Krug refused to provide plaintiff with copies of his medical records in retaliation for plaintiff's assertion of his intention to file a § 1983 action regarding the medical care he received for his knee.

### III.  Discussion

#### A.  Exhaustion of Administrative Remedies

Defendants contend that plaintiff did not fully exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a) and, therefore, that his complaint must be dismissed in its entirety.

Section 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted.

The exhaustion requirement of § 1997e(a) "applies to all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).  The prisoner

bears the burden of establishing exhaustion under § 1997e(a).  Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998).  In order to carry that burden, the prisoner must allege that he exhausted all available administrative remedies and must either attach documentation to his complaint showing the administrative disposition of any grievances he filed or describe the administrative proceedings and the outcome thereof with specificity.  Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000).  Further, "a prisoner must administratively exhaust his or her claim as to each defendant associated with the claim."  Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003).  A complaint containing both exhausted and unexhausted claims, i.e., a "mixed complaint," must be dismissed in its entirety.  Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005).[2]

In order for a Michigan inmate to exhaust his administrative remedies, he must utilize the Michigan Department of Corrections' three-step grievance process.  In Poor v. Grayson, 46 Fed.Appx. 825, 826, 2002 WL 31085179 *1 (6th Cir.(Mich.)),[3] the Sixth Circuit discussed this process:

> A Michigan prisoner's administrative remedies are set forth at Michigan Department of Corrections Policy Directive ("MDOC PD") No. 03.02.130 (October 11, 1999), which provides for a three-level written grievance procedure to be used after a prisoner attempts to verbally resolve an issue.  At Step I, the prisoner files a grievance with the Step I grievance coordinator, who assigns someone to respond.  *See* MDOC PD No. 03.02.130(T).  If the prisoner does not receive a timely response or is dissatisfied with the response at Step I, the prisoner may file a Step II appeal with the Step II grievance coordinator.  *See id*.  Likewise, if the prisoner does not receive a timely Step II response or is dissatisfied with the

---

[2] Jones v. Bey was decided after plaintiff filed suit.  Plaintiff claims that in the event the court should find his complaint to be a "mixed" one, Jones v. Bey should not be applied retroactively and he should be allowed to proceed on his exhausted claims.  This issue is discussed below in further detail.

[3] PD No. 03.02.130 was amended after Poor v. Grayson was decided.  However, the grievance process, as discussed therein, remains the same.

> response, the inmate may file a Step III appeal with MDOC's
> Prisoner Affairs Section. *See id.* A prisoner may bypass Steps I
> and II and file a Step III grievance if the matter concerns "racial or
> ethnic discrimination and staff brutality or corruption." *See*
> MDOC PD No. 03.02.130(II). The prison's response at Steps I
> and II shall be sent to the prisoner within 15 business days, unless
> an extension is granted. *See* MDOC PD No. 03.02.130(CC), (FF).
> The entire process from filing a Step I grievance to the Step III
> response shall be completed within 90 calendar days, absent an
> extension. *See* MDOC PD No. 03.02.130(V).

Plaintiff alleged in his complaint that he filed three grievances regarding the incidents that form the basis of his complaint and that he appealed each of the grievances to Step III. In addition, plaintiff attached documentation to his complaint showing the disposition of those grievances.

In MDOC Grievance No. 200304096312D3, plaintiff alleged that he had been denied necessary medical care for his injured knee. Plaintiff did not specifically name any of the defendants at the Step I level of Grievance No. 200304096312D3, or, for that matter, at either the Step II or Step III levels. In order to satisfy the exhaustion requirement under MDOC grievance procedures, a prisoner must identify the party he seeks to sue at the Step I level. See Burton, 321 F.3d at 575 ("Thus, for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process"). Plaintiff failed to do so in Grievance No. 200304096312D3. Accordingly, the grievance is insufficient to establish exhaustion of plaintiff's Eight Amendment claims.

Plaintiff filed a second grievance regarding the medical treatment he received for his knee injury. In MDOC Grievance No. JCF04002401028A, plaintiff indicated that he had filed a prior grievance regarding the treatment he received, that he had failed to identify any individual

actor in the prior grievance, and that he was filing a second grievance to identify the responsible parties. The allegations set forth in the Step I grievance closely track the allegations of plaintiff's complaint. He recounts the circumstances of his injury and the alleged delay in providing him with the necessary treatment, and he specifically alleges that he suffered permanent loss of use of his right leg as a result of the failure of Dr. DeMasi and Dr. Doane to provide proper treatment in a timely manner. Further, plaintiff alleges in his complaint that he pursued this grievance through all three steps of the process, and the documents attached to his complaint substantiate his allegations in this regard.[4] Thus, Dr. Doane and Dr. DeMasi are specifically identified by name at the Step I level of Grievance No. JCF04002401028A, the allegations of the grievance mirror the allegations of the complaint, and plaintiff completed the grievance process. Plaintiff has thus satisfied the requirements of § 1997e(a) as to his Eighth Amendment claim against Dr. Doane.[5] Further, though Dr. DeMasi did not join in this motion,

---

[4] Plaintiff attached to his complaint copies of the Step I and Step II grievances and responses and a copy of the Step III grievance, but no Step III response. He alleged in the complaint that he mailed a Step III grievance to the MDOC Director's office in Lansing, Michigan on November 19, 2004, and that he had received no response to the grievance as of February 2, 2005, the date he filed suit (plaintiff has since received a Step III response). The court finds that plaintiff's averments regarding his mailing of the grievance, together with the documents he attached to his complaint, establish that he pursued the grievance through all three steps of the process. The court notes that plaintiff waited over two months after mailing the Step III grievance to file suit. MDOC officials thus had ample time to provide a Step III response. See, e.g., Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004)(grievance deemed exhausted where inmate properly submitted grievance and prison officials failed to respond). Indeed, MDOC Policy Directive 03.02.130(U) provides that the entire grievance process from start to finish "shall be completed within 90 calendar days...."

[5] Defendants contend that the second grievance plaintiff filed regarding the treatment he received for his knee was essentially a "nullity" and that it should not be considered at all in determining whether plaintiff exhausted his administrative remedies. They argue that plaintiff, having failed to identify the responsible parties in the first grievance, could not file a successive grievance to cure the deficiencies in the first. Defendants have presented the court with no case law holding that an inmate cannot file a successive grievance to cure a deficiency in a previously filed grievance, and the court is not inclined to adopt such a requirement.

for the purposes of determining whether plaintiff totally exhausted his claims, the court finds that plaintiff exhausted his administrative remedies as to his Eighth Amendment claim against Dr. DeMasi.

Plaintiff also filed a grievance regarding the denial of his request for copies of his medical records. In MDOC Grievance No. JCF041002498012Z, dated October 4, 2004, plaintiff stated that he had filed two requests for copies of his medical records, that he had received no response to his requests, that there was no excuse for such a lengthy delay, that he needed the records for his "up-and-coming civil rights complaint," and that the failure to respond to his requests infringed upon his constitutional right to access the courts. Defendants concede that plaintiff identified both JCF Health Care and defendant Krug in the Step I grievance, and the documents attached to plaintiff's complaint show that he completed the grievance process by filing Step II and Step III appeals.[6] Further, the grievance clearly gave prison officials notice of plaintiff's contention that the failure to comply with his requests constituted a violation of his right to access the courts. In addition, the grievance is arguably sufficient to give prison officials notice of plaintiff's contention that the failure to comply with his requests constituted a denial of his due process rights. Defendants do not contend otherwise. However, defendants argue that the grievance is insufficient to establish exhaustion of plaintiff's retaliation claim and, therefore, that plaintiff failed to totally exhaust his administrative remedies prior to filing suit.

There is no question that plaintiff did not expressly state in the grievance that the failure to comply with his requests for copies of his medical records constituted retaliation. Plaintiff contends, however, that he alleged sufficient facts in the grievance to give prison officials notice

---

[6]Plaintiff did not attach a Step III response to his complaint. However, as with as with Grievance No. JCF04002401028A, the record demonstrates that plaintiff properly filed a Step III grievance and that prison officials failed to respond in a timely manner.

of his retaliation claim and, therefore, that he has satisfied the exhaustion requirement as to that claim notwithstanding the fact that he did not expressly allege retaliation in the grievance. The court disagrees.

In Burton, supra, 321 F.3d at 575, the Sixth Circuit stated the following with respect the exhaustion requirement:

> Thus, for a court to find that a prisoner had administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process. In describing the alleged mistreatment or misconduct, however, we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

Thus, a prisoner need not set forth his claim in detail in a grievance, allege all facts necessary to state the elements of his cause of action, or identify his claim and the constitutional basis thereof using proper legal terminology. Accordingly, plaintiff's failure to expressly state in the Step I grievance that he was alleging a First Amendment retaliation claim is not necessarily fatal to his contention that he exhausted that claim. However, as Burton makes clear, an inmate must, in some fashion, provide prison officials with notice of the misconduct or mistreatment that forms the basis of the constitutional claim. Though plaintiff set forth in the Step I grievance the facts underlying his retaliation claim against defendant Krug and JCF health care, there is nothing in the grievance that could have reasonably placed prison officials on notice of the misconduct alleged in plaintiff's complaint, i.e., that the withholding of his medical records constituted retaliation for his assertion of his intention to file a § 1983 action regarding the

medical care he received.  The purpose of the exhaustion requirement is to give "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Porter, supra, 534 U.S. at 525, 122 S.Ct. at 988.  An allegation that a request for medical records went unanswered and that such conduct infringed upon plaintiff's right to access the courts, as plaintiff alleged in the Step I grievance, is a substantially different matter than an allegation that the requests were purposefully ignored or denied in retaliation for plaintiff's assertion of his intent to file a § 1983 claim.  As the Step II Grievance Appeal Response indicates, prison officials treated plaintiff's grievance as an administrative problem and informed him that his requests would be processed once the records became available for copying.  Based on the allegations of the grievance, prison officials had no reason to investigate the matter as one involving an intentional refusal to comply with the requests for retaliatory purposes, and they did not treat it as such.  Thus, prison officials were not given an opportunity in the first instance to address plaintiff's claim of retaliation.  Accordingly, the court finds that plaintiff failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim.  Plaintiff's complaint is thus a "mixed complaint."

As noted in footnote 2, supra, plaintiff contends that the total exhaustion rule established in Bey v. Johnson should not be applied in this matter because that case was decided after he filed suit.  Plaintiff also contends that he should be allowed an opportunity to amend his complaint to dismiss any unexhausted claims.  The court disagrees on both accounts.  Contrary to plaintiff's first argument, where, as in Bey v. Johnson, a new rule of law is announced in a civil matter and applied to the parties before it, the decision must be given full retroactive effect in all pending cases.  See In re Federated Dept. Stores, Inc., 44 F.3d 1310, 1317 (6th Cir. 1995); see also Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 113 S.Ct. 2510 (1993).  Accordingly,

the total exhaustion rule established in Bey v. Johnson must be applied in this case. Further, allowing plaintiff to amend his complaint to dismiss his unexhausted claims would be inconsistent with the Sixth Circuit's reasoning in Bey v. Johnson. The Sixth Circuit has determined that § 1997e(a) requires total exhaustion. If inmates were allowed to amend their complaints to dismiss any unexhausted claims, the rule announced in Bey v. Johnson would essentially be vitiated. Accordingly, plaintiff's request that he be permitted to amend his complaint is denied. Pursuant to the total exhaustion rule, as announced in Bey v. Johnson, the court recommends that plaintiff's complaint be dismissed in its entirety, without prejudice, based upon his failure to exhaust his retaliation claim prior to filing suit.

### B. Review of the Merits

In addition to seeking dismissal on the ground of failure to exhaust administrative remedies, defendants contend that plaintiff has failed to state a right of access, retaliation, or due process claim upon which relief may be granted. The court will decline to address the merits of plaintiff's claims at this time. When addressing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court is generally limited to a review of the four corners of the complaint. See, e.g., Kostrzewa v. City of Troy, 247 F.3d 633, 643 (6th Cir. 2001)("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint"). At the time plaintiff filed his complaint, he had not received the medical records that lie at the heart of his First Amendment and due process claims. Plaintiff has indicated in his brief in response to defendants' motion that he received those documents shortly after he filed suit. This admission cannot be overlooked in assessing the merits of plaintiff's claim. However, the admission is, arguably, a matter outside of the pleadings and thus cannot properly be considered on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). See, e.g., Fonte v. Board of Managers of Continental

Towers, 848 F.2d 24, 25 (2d Cir. 1988)("Factual allegations contained in briefs and legal memoranda are...treated as matters outside the pleading for purposes of Rule 12(b)"). In light of plaintiff's admission, the court finds that the proper course of action would be to convert defendants' motion into one for summary judgment pursuant to Fed.R.Civ.P. 12(b) and allow the parties an opportunity to submit any evidence they may deem pertinent to plaintiff's claims.[7] However, this step need be taken only if the district court declines to accept the court's recommendation that the matter be dismissed for failure to exhaust administrative remedies. Accordingly, should that recommendation be rejected, the court will accept additional evidentiary materials and briefing regarding plaintiff's First Amendment and due process claims and will examine those claims under the Rule 56 summary judgment standard. Dates for the submission of these materials will be provided by the court, as necessary.

### IV. Conclusion

For the reasons stated above, the court recommends that defendants' motion to dismiss be **GRANTED** and that plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

---

[7]Rule 12(b) states, in pertinent part:
> If, on a motion asserting the defense numbered (6) for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>
VIRGINIA M. MORGAN<br>
UNITED STATES MAGISTRATE JUDGE

Dated:   July 1, 2005

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record herein by electronic means or U.S. Mail on July 1, 2005.

s/Jennifer Hernandez<br>
Case Manager to<br>
Magistrate Judge Morgan